UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHN BEAN TECHNOLOGIES CORPORATION                    PLAINTIFF

v.                              No. 2:15-CV-02211

MORRIS & ASSOCIATES, INC.                             DEFENDANT

## OPINION AND ORDER

Before the Court is a motion (Doc. 84)[1] for partial summary judgment filed by Defendant Morris & Associates, Inc. ("Morris"). Morris has also filed a brief in support (Doc. 85) and a statement of facts (Doc. 86). Plaintiff John Bean Technologies Corporation ("JBT") has filed a response in opposition (Doc. 95) and responsive statement of facts (Doc. 96). Morris has filed a reply (Doc. 99). This motion requests partial summary judgment on JBT's "false marking and false advertising claims associated with Morris's advertising of its IntraGrill auger chiller as patented under United States Patent No. 6,308,529 ('the '529 patent')." (Doc. 84, p. 1).

Also before the Court is a separate motion (Doc. 91)[2] for partial summary judgment, a brief in support (Doc. 92) and a statement of facts (Doc. 93) filed by Morris. JBT has filed a response in opposition (Doc. 101) and responsive statement of facts (Doc. 102). Morris has filed a reply (Doc. 105), and JBT has filed a surreply (Doc. 109) with leave of Court. This motion requests partial summary judgment on JBT's "false advertising claims associated with Morris's IntraGrill auger chiller webpage." (Doc. 91, p. 1).

Also before the Court is JBT's motion (Doc. 78)[3] for reconsideration of a protective order (Doc. 77) entered by the Court. JBT has filed a brief in support (Doc. 80) and Morris has filed a

---

[1] Related unredacted documents are filed under seal. (Docs. 87, 97, 98, and 100).
[2] Related unredacted documents are filed under seal. (Docs. 94, 103, 104, and 106).
[3] Related unredacted documents are filed under seal. (Docs. 79 and 81).

1

response (Doc. 88).

Because JBT cannot show a genuine dispute of material fact with respect to the issue of causation and injury, the motions for partial summary judgment will be granted. Because JBT cannot show that the discovery it seeks is relevant or proportional, the motion for reconsideration will be denied.

## I. Procedural Posture

This action was filed in 2015 by Cooling & Applied Technology, Inc. ("CAT").[4] CAT asserted Patent Act false marking claims pursuant to 35 U.S.C. § 292(b), Lanham Act false advertising claims pursuant to 15 U.S.C. § 1125, and various North Carolina and Arkansas State law claims against Morris. CAT's claims involved Morris's IntraGrill auger chiller, marked as patented under the '529 patent, and Morris's COPE product, marked as patented under United States Patent No. 7,470,173 ("the '173 patent") and United States Patent No. 7,588,483 ("the '489 patent"). Morris filed a motion to dismiss the false marking claims and any associated Lanham Act and state law claims. CAT's business was acquired by JBT, and CAT assigned its claims in this lawsuit to JBT without opposition from Morris.

The Court substituted JBT for CAT and denied the motion to dismiss. (Doc. 42). In its opinion and order denying that motion to dismiss, the Court addressed the issue of causation and injury. With respect to the false marking claims related to the '529 patent, the Court explained that JBT would be required to show a competitive injury caused by Morris to succeed on its false marking claim, and noted that JBT alleged that "[u]pon information and belief . . . customers have been reluctant to purchase and, *in some instances, have declined to purchase*, CAT's chillers or certain parts of CAT's chillers as a result of Morris's false marketing." (Doc. 42, p. 9 (quoting

_____

[4] Except to avoid confusion, the Court will identify CAT as JBT.

Doc. 1, ¶ 102)).

Following entry of this order, the parties filed a second joint Rule 26(f) report. (Doc. 45). JBT proposed that the parties engage in full discovery on all claims and defenses. Morris proposed that discovery be bifurcated, and first be limited to discovery regarding intent to deceive and Morris's advice-of-counsel defense. The Court entered an interim scheduling order (Doc. 46) declining to limit discovery as Morris proposed, thereby allowing JBT to seek discovery regarding all claims and defenses. The Court also set a claim construction hearing, which was held on July 19, 2017. JBT then amended its complaint (Doc. 64), primarily adding additional factual allegations in support of its willfulness claims, and maintaining its nonspecific allegations that it had been or was likely to be injured by Morris's false marking and false advertising. An unredacted copy (Doc. 65) of the amended complaint was filed under seal.

Thereafter, Morris moved for a protective order (Doc. 69). Morris argued that despite ample opportunity in the course of discovery, JBT had not met its obligation to articulate or provide evidence of a single injury caused by Morris's alleged false marking and false advertising of the IntraGrill auger chiller. Referencing the proportionality principle in Federal Rule of Civil Procedure 26, Morris requested that the Court protect Morris from JBT's requests for detailed disclosure of Morris's sales and financial information related to the IntraGrill auger chiller until JBT showed evidence that it had suffered an injury. JBT's response argued that it had been injured by Morris's false marking and false advertising, but the responses to Morris's discovery requests and the evidence cited in support of that response indicated otherwise. JBT's failure to provide evidence of injury not only led the Court to determine that JBT's discovery requests were disproportionate to the needs of the lawsuit, but that summary judgment against JBT may be appropriate at the very least on claims related to the IntraGrill auger chiller marked with the '529

patent.  The Court granted the motion for protective order, and further ordered Morris to file a motion for partial summary judgment.

The parties then filed the motions under consideration.

## II.     Standard of Review

### A.       Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of showing the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  It may meet this burden by citing to affidavits, pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  When the moving party has met its burden, the nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting old Fed. R. Civ. P. 56(c)).  "The nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial."  *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 324).

In analyzing whether there is a genuine dispute of material fact, the Court draws all reasonable inferences in the nonmoving party's favor.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587–88.  "[T]he non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.,* 602 F.3d 928, 931 (8th Cir. 2010).  "A party may not rely solely on

inadmissible hearsay in opposing a motion for summary judgment, but instead must show that admissible evidence will be available at trial to establish a genuine issue of material fact." *Fin. Timing Publ'ns, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 942 (8th Cir. 1990). "[S]ummary judgment is appropriate when there is 'adequate time' for discovery and not solely when discovery is complete. The district court has discretion to determine when there has been adequate time for discovery . . . ." *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chemical Co.*, 165 F.3d 602, 606 (8th Cir. 1999) (citation omitted). A party who seeks additional discovery in response to a motion for summary judgment must do more than speculate that additional discovery would be useful—it must show, without conclusory statements that some evidence might possibly be found, how additional discovery would alter the evidence before the court. *Nat'l Bank of Commerce of El Dorado, Ark.*, 165 F.3d at 606 (8th Cir. 1999).

### B. Controlling Substantive Federal Law

As a general matter, the Court applies Federal Circuit precedent to patent law issues, but otherwise applies the precedent of the Eighth Circuit. *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc in relevant part), *abrogation on other grounds recognized by Amgen Inc. v. Sandoz Inc.*, 877 F.3d 1315, 1325–26 (Fed. Cir. 2017). The Court applies Federal Circuit precedent to JBT's Patent Act false marking claims. *Panduit Corp. v. All States Plastic Mfg. Co., Inc.*, 744 F.2d 1564, 1573 (Fed. Cir. 1984), *overruled on other grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985). The Court applies Eighth Circuit precedent to JBT's Lanham Act false advertising claims. *Syngenta Seeds, Inc. v. Delta Cotton Co-op, Inc.*, 457 F.3d 1269, 1273 (Fed. Cir. 2006). The Court applies state law to those claims over which it is exercising supplemental jurisdiction under 28 U.S.C. § 1367. *Felder v. Casey*, 487 U.S. 131, 151 (1988) ("[W]hen a federal court exercises diversity or pendent jurisdiction over

state-law claims, 'the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'" (quoting *Guar. Tr. Co. v. York*, 326 U.S. 99, 109 (1945))).

### C.  Protective Orders

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  For good cause, the Court may enter a protective order to protect a party from undue burden.  Fed. R. Civ. P. 26(c)(1).

## III.  Facts

JBT and Morris are manufacturers and distributors of auger chillers to poultry processors in the United States.  JBT and Morris sell other poultry processing equipment, as well.  For purposes of these motions, it is agreed that JBT and Morris are the only two distributors of auger chillers in the relevant market.  An auger chiller is a piece of equipment in a processing line which receives chicken carcasses in the middle stages of the butchering process and cools them to prevent contamination.  Auger chillers vary in the details of their design, but the general form of an auger chiller is a long, open-topped tank mostly encompassing an auger running the length of the tank.  Cold water is run in a current from the far end of the tank to the receiving end to cool the chickens, and the auger slowly rotates on a shaft, driving the chickens against this current to the far end of the tank.  Unless another opening in the auger blades, or flights, is present, the water in the tank flows through the small space between the edge of the auger blades and the interior wall of the tank.  The flow of water in the center of the tank near the auger shaft is generally slowed by the auger blades, and tends to heat more quickly and cool less effectively than the flowing water at the edge of the blades.  When they reach the end of the tank, the chilled chickens are then received by

the next stage of the processing line.

Auger chillers are expensive, heavy-duty pieces of equipment that are manufactured to last for many years. Consequently, sales to customers—various processors around the country—are relatively few, highly competitive, and worth a substantial amount of money. Salespeople for JBT and Morris attempt to keep a close relationship with their customers and potential customers to maintain a good reputation in the market and increase the chance of future sales. JBT and Morris also maintain websites, publish brochures for distribution to customers, and attend trade shows in order to improve their reputations with customers and make additional sales.

Morris sells an auger chiller called IntraGrill. In an effort to increase the flow of water throughout the auger chiller tank, Morris has manufactured vertical openings in the auger blades of the IntraGrill auger chiller. These openings run from the shaft to the edge of the blade. Morris calls these openings "water passages."[5] Morris has marked the IntraGrill auger chiller with the '529 patent. Morris advertises its auger chiller as patented on its website, in brochures, on signs at trade shows, and in communication with customers and potential customers. JBT believes Morris has falsely marked its IntraGrill auger chiller as patented and is falsely advertising its IntraGrill auger chiller as patented.

JBT also sells an auger chiller, called FATCAT. FATCAT was manufactured and sold by CAT prior to CAT's purchase by JBT. In 2013, CAT began including openings for water in the blades of its own auger chillers. JBT calls these openings "flow reliefs." JBT's flow reliefs do not run from the shaft to the edge of the blade, but are located only near the shaft. When JBT sold FATCAT auger chillers to customers, flow reliefs could be included at no additional cost.

---

[5] To the extent this term, or any other term in this opinion, has a disputed meaning relevant to construction of a patent at issue, the Court does not construe that term in this opinion.

Morris's website advertises features of its IntraGrill auger chiller. The website represents that Morris's auger chiller is patented. The website includes a caricature of the IntraGrill auger chiller. The website also includes a caricature of an auger chiller that can be identified as the FATCAT auger chiller on account of openings that appear to be flow reliefs in the auger blades. The website also includes a statement that "In other systems, water circulates only around the shaft and through a narrow gap between the auger flights and the tank wall." JBT believes that Morris is falsely advertising IntraGrill as patented on this webpage. JBT also believes that the flow reliefs on the FATCAT caricature are disproportionately small compared to their size on an actual FATCAT, and that this is a literally false comparative advertisement. JBT also believes that the statement about water flow in "other systems" is a literally false comparative advertisement.

## IV.    Analysis

### A.    Federal Claims

#### 1.    False Marking

Morris has moved for partial summary judgment on JBT's false marking claims related to the IntraGrill auger chiller. Morris argues that there is no genuine dispute of material fact with respect to whether JBT suffered a competitive injury proximately caused by Morris's alleged false marking. JBT responds that summary judgment is improper because Morris's alleged false marking harmed JBT's reputation and goodwill with a major customer and because the marking enhances Morris's reputation, necessarily harming JBT by virtue of the two-player market.

The Federal Circuit has described the "competitive injury" requirement amended into the Patent Act by the America Invents Act as a statutory standing requirement for plaintiffs bringing a false marking claim. 35 U.S.C. § 292(b); *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1400 (Fed. Cir. 2015). While issues of statutory standing have been treated by courts "as effectively

jurisdictional," the term "statutory standing" is misleading, as the actual issue addressed by a "statutory standing" analysis is whether a plaintiff has a cause of action under the relevant statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S.--, 134 S.Ct. 1377, 1387, n.4 (2014) (explaining in the closely-analogous context of Lanham Act false advertising claims that whether there is "prudential standing" or "statutory standing" does not implicate a federal court's subject matter jurisdiction). To succeed on a false marking claim against Morris, JBT must show that Morris's false marking caused a competitive injury to JBT.

A competitive injury is "a wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition." *Sukumar*, 785 F.3d at 1400 (quoting Black's Law Dictionary (9th ed. 2009). Competitive injury is analogous to the concept of "injury to competition" found in antitrust law. *Id.* at 1401 (citing *Razorback Ready Mix Concrete Co. v. Weaver*, 761 F.2d 484, 488 (8th Cir. 1985); *Midwest Underground Storage, Inc. v. Porter*, 717 F.2d 493, 498 (10th Cir. 1983)).

> If an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market. False marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement. False marking can also cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

*Forest Grp., Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1303 (Fed. Cir. 2009) (citation omitted).

JBT argues that competitive injury is a necessary consequence of false marking in a two-player market because Morris's auger chillers gain value from being marked as patented, and the value of JBT's auger chillers necessarily diminishes when the value of Morris's auger chillers increases. JBT argues in the alternative that its reputation and goodwill with a customer were

injured when the customer declined to purchase a JBT auger chiller with flow reliefs because Morris's auger chillers were marked as patented, but subsequently asked JBT to retrofit the auger chiller with flow reliefs.

As an initial matter, the Court rejects JBT's argument that its auger chillers are necessarily devalued if the value of Morris's auger chillers increases. This principle supports a rebuttable presumption of economic injury in false advertising cases where a two-player market necessarily makes ads comparative.[6] *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 162 (2d Cir. 2007). Whether a patent marking is comparative is not an issue in false marking cases, and the principle JBT relies on has no clear application to these claims. The Patent Act now affirmatively requires a Plaintiff to demonstrate competitive injury as part of a false marking claim. 35 U.S.C. § 292(b). This requirement was amended into the Patent Act against a surge in false-marking qui tam litigation and allows the United States to recover a per-article fine and actually-injured parties to recover compensatory damages, while eliminating litigation brought by unharmed parties. *See Sukumar*, 785 F.3d 1396 at 1400 (reviewing legislative history of the competitive injury amendment in the America Invents Act). Allowing a plaintiff to proceed to trial with no evidence of actual competitive injury would defeat the purpose of this amendment. *Cf. Gravelle v. Kaba Ilco Corp.*, 684 Fed. App'x 974, 979–80 (Fed. Cir. 2017) (explaining that the competitive injury causation analysis requires more than general speculation about what could occur).

The evidence JBT cites in support of this argument would establish a genuine dispute of fact with respect to whether marking Morris's auger chiller as patented increases its value, were

---

[6] JBT's argument is further addressed in the Court's analysis of JBT's false advertising claims, below.

that issue in dispute, but JBT cites no evidence to support its contention that as Morris's auger chillers increase in value relative to their value before being marked as patented, JBT's auger chillers must simultaneously decrease in value relative to their value before Morris's auger chillers were marked as patented.

For this reason, JBT leans heavily on an instance in which one customer, when purchasing a JBT auger chiller for one processing plant, declined JBT's offer to add flow reliefs to the auger blade, but then later requested that JBT retrofit the auger blade with those flow reliefs. JBT cites no admissible evidence, but only hearsay and speculation, to support its argument that the customer initially declined the flow reliefs because Morris's auger chiller with water passages was marked patented.[7] Even were this evidence admissible, JBT has known of this incident since 2013, but chose not to disclose it during months of discovery despite being served with interrogatories to which that information was responsive. Rule 37(c)(1) precludes its use now. Furthermore, JBT made the sale in question, and later retrofitted the blades at the customer's request, at no additional charge to the customer. JBT thereafter made additional sales to that customer. JBT cites no admissible evidence to support its contention that it lost reputation or goodwill with that customer, and the evidence in the record indicates otherwise.

JBT cites no admissible evidence to support its argument that Morris's alleged false

---

[7] Even if the evidence were admissible, it would show only that the customer was hesitant to purchase an auger chiller with new features from JBT because the customer had, in the past, been engaged in patent infringement litigation with JBT's sole competitor, Morris. That is, the evidence tends to show that Morris's past litigation actions, the customer's awareness that Morris had patents protecting some of its products, and the customer's reliance on its own legal team's advice (which might have multiple foundations other than Morris's marking) led to the customer's decision to request a JBT auger chiller with no flow reliefs in the auger blade. The inadmissible evidence does not show that the customer's decision was caused by Morris's marking of its own auger chiller as patented, and reaching that conclusion requires speculation, rather than reasonable inference.

marking caused a competitive injury to JBT. JBT was not dissuaded from entering the auger chiller market. JBT was not deterred from researching improvements to auger chillers or making sales of auger chillers. JBT made and sold auger chillers with flow reliefs in the auger blades, and sold them for the same price whether or not there were flow reliefs. JBT did not make unnecessary investments to design around Morris's IntraGrill—rather, JBT believes its own design to be superior to Morris's design. JBT does not cite any cost incurred to analyze the validity or enforceability of the '529 patent with respect to JBT's auger chiller. Because JBT cannot show that a genuine dispute of material fact exists with respect to whether JBT suffered a competitive injury proximately caused by Morris's alleged false marking of its IntraGrill product, summary judgment for Morris is proper on all false marking claims related to the IntraGrill product.

### 2.      False Advertising

Morris has moved for partial summary judgment on any false advertising claims for damages or injunctive relief related to advertising materials for the IntraGrill auger chiller. Morris argues that there is no genuine dispute of material fact with respect to whether JBT suffered or is likely to suffer an economic injury proximately caused by Morris's alleged false advertising. JBT responds that summary judgment is improper because Morris's alleged false advertising harmed JBT's reputation and goodwill with a major customer, because the advertising enhances Morris's reputation, necessarily harming JBT by virtue of the two-player market, because Morris has not rebutted the presumption of causation and injury that arises from literally false comparative advertising, and because JBT has shown a likelihood of irreparable harm if Morris is not enjoined.

"To establish a claim under the false or deceptive advertising prong of the Lanham Act, a plaintiff must prove [among other things] . . . the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant or by a

loss of goodwill associated with its products." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998). To make this showing, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and . . . that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc.*, 134 S.Ct. at 1391. A plaintiff who makes this showing of economic injury comes within the statute's coverage. *Id.* at 1387 n.4. To obtain injunctive relief preventing a defendant's false advertising, even where economic injury can be presumed, a plaintiff must show it will suffer irreparable harm if an injunction does not issue. *Buetow v. A.L.S. Enter., Inc.*, 650 F.3d 1178, 1183 (8th Cir. 2011).

JBT's argument that it suffered economic or reputational injury involving a major customer as a result of Morris's purported false advertising is unsupported by admissible evidence. JBT relies on the same customer interaction cited above, and that evidence is inadmissible hearsay and excluded from consideration under Rule 37(c)(1). In 2013, JBT began selling auger chillers with flow reliefs in the auger blade. While making a sale of an auger chiller to the customer in question, JBT offered to include flow reliefs in the auger blade at no additional cost. The customer declined, and JBT made a sale of an auger chiller without flow reliefs. At a later date, the customer asked JBT to retrofit the auger blade with flow reliefs, and JBT did so at no cost to the customer. Subsequently to the 2013 sale, JBT also sold that customer an auger chiller with flow reliefs in the auger blade for another of the customer's facilities.

JBT cites no evidence that any Morris advertising played a role in the customer initially declining flow reliefs, and its argument that this occurred is at best speculation based on inadmissible hearsay. JBT also cites no evidence to indicate that JBT suffered reputational injury with that customer. With respect to that customer, or any others, JBT has failed to cite evidence

showing that the customer withheld trade from JBT as a result of Morris's alleged false advertising.

Lacking any admissible evidence of actual economic injury, JBT argues that Morris's alleged false advertising enhances Morris's reputation and, in a two-player market, necessarily devalues JBT's reputation. JBT cites to *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007), in support of this principle. JBT separately argues for application of the rebuttable presumption of injury and causation that arises when there is proof of a willfully deceptive, literally false comparative advertisement. *See Buetow*, 650 F.3d at 1183 ("[W]hen a competitor's advertisement, particularly a comparative ad, is proved to be literally false, the court may presume that consumers were misled and grant an irreparably injured competitor injunctive relief without requiring consumer surveys or other evidence of the ad's impact on the buying public.").

The first of these two arguments is merely one prong in the presumption argument. The "two-player market" principle addressed in *Time Warner* is that, in a two-player market, falsely advertising one's own product as better than any alternative product is necessarily understood as comparative to the other competitor's product, even if no direct reference is made to the competitor. *See Time Warner Cable, Inc.*, 497 F.3d at 162 ("As the District Court found, TWC *is* 'cable' in the areas where it is the franchisee. Thus, even though Shatner does not identify TWC by name, consumers in markets covered by the preliminary injunction would undoubtedly understand his derogatory statement, 'settling for cable would be illogical,' as referring to TWC." (citation omitted)). Establishing advertising as comparative does not demonstrate economic injury, but is only one step in showing that a party is entitled to a rebuttable presumption of economic injury. *Buetow*, 650 F.3d at 1183.

Rebuttable presumptions serve only "to control the result where there is an entire lack of competent evidence." *Del Vecchio v. Bowers*, 296 U.S. 280, 286 (1935); *see also St. Louis*

*Shipbuilding Co. v. Dir. of Office Workers' Comp. Programs, U.S. Dep't of Labor*, 551 F.2d 1119, 1124 (8th Cir. 1977) ("The presumption serves only to control the result where there is a total lack of competent evidence."). With respect to "statutory standing" issues such as the Lanham Act's competitive injury element, when sufficient proof has been offered to rebut a presumption that a claim is within the coverage of a statute, "it falls out of the case." *St. Louis Shipbuilding Co.*, 551 F.2d at 1124; *accord St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) ("Our cases make clear that at that point the shifted burden of production became irrelevant: 'If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted,' . . . and 'drops from the case.'" (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, n.10 (1981)) (internal citation omitted)). Thereafter, the analysis on summary judgment returns to whether each party has cited to admissible evidence to carry its burden on summary judgment. *Cf. Del Vecchio*, 296 U.S. at 286–87 (explaining that once the presumption is rebutted, if only one party submits evidence relevant to a dispute of fact, the case must be decided upon that evidence, and only if both parties thereafter submit evidence must that evidence be weighed). A presumption of causation may be rebutted by evidence that establishes a different cause. *See, e.g.*, *In re Am. Milling Co., Ltd.*, 409 F.3d 1005, 1018 (8th Cir. 2005) (presumption of negligence can be rebutted by "evidence sufficient to establish some cause other than negligence"); *White v. McDonnell Douglas Corp.*, 985 F.2d 434, 435 (8th Cir. 1993) (presumption of employment discrimination can be rebutted by production of evidence that cause of employer's action was "a legitimate, nondiscriminatory reason").

JBT argues that it is entitled to a presumption of economic injury and causation with respect to Morris's statements on its website and elsewhere that its auger chiller is patented, Morris's inclusion on its website of a caricature of JBT's auger chiller that JBT argues misrepresents the

size of the flow reliefs cut into JBT auger chiller blades, and Morris's inclusion on its website of a description of water flow in JBT's auger chiller as limited to "around the shaft and through a narrow gap between the auger flights and the tank wall." (Doc. 103-1, p. 4). If the Court assumes without deciding that JBT is entitled to such a presumption for each of these issues, summary judgment on these claims is still proper. Morris cites to evidence in the record rebutting the presumption of causation or injury, and in the absence of the presumption, JBT cites to no evidence establishing a genuine dispute of material fact with respect to causation or injury.

With respect to Morris's statements that its auger chiller is patented, there is evidence in the record that whether processing equipment is advertised as patented does not play a significant role in equipment sales. Multiple deponents familiar with selling auger chillers testified that whether equipment is advertised as patented is all but meaningless to customers seeking to purchase. *See, e.g.*, Deposition of Nate Harrison,[8] (Doc. 87-6, pp. 242:18–243:8 (aware of no lost auger chiller sales due to Morris's marking)); Deposition of Luke Miller (Doc. 87-7, pp. 51:10–23 (customers never inquired about patents); 99:9–100:3 (customers generally unconcerned about patents); 100:1-3 (customers did not keep track of what equipment was patented)); Deposition of Brett Mentzer (Doc. 97-4, p. 141:10-25 (patent not needed or referenced to make sales)); Deposition of William Morris, III (Doc. 97-5, pp. 34:2–35:16 (patents not high on list of things important to customers)).

With respect to Morris's website, there is evidence that customers do not make equipment purchases based on websites. *See, e.g.*, Deposition of Nate Harrison (Doc. 87-6, pp. 102:6–103:4 (website and other advertising unimportant for generating sales, and focus was instead loyalty, relationship, quality, and price)); Deposition of Luke Miller (Doc. 87-7, p. 52:9-14 (customers

---

[8] All deposition citations use the document's internal pagination.

weren't directed to and never mentioned websites)); Deposition of Brian Kovanda (Doc. 87-8, p. 75:4-9 (customers never mentioned Morris website)).

There is also evidence that JBT's reputation was not hurt and goodwill was not lost as a result of Morris's activity, and further that any decline in reputation and goodwill relevant to this case happened because CAT was sold to JBT. *See, e.g.*, Deposition of Nate Harrison (Doc. 87-6, 104:13–109:4 (noticed customer hesitation after sale of CAT to JBT on account of latter's reputation, but managed to keep sales steady)). There is also evidence that JBT's sales remained strong despite Morris's activity. *See, e.g.*, Deposition of Luke Miller (Doc. 87-7, p. 89:7-13 (2016 and 2017 were good sales years)). In the first paragraph of its statement of facts, Morris cites to evidence that JBT has not lost any sales caused by Morris's alleged false advertising. (Doc. 87, p. 1). JBT's response denies this statement without evidence "because [JBT] has not engaged in any third-party discovery." (Doc. 98-1, p. 1). In the third paragraph of its statement of facts, Morris cites to evidence that JBT has not suffered any quantifiable economic injury caused by Morris's alleged false advertising. (Doc. 87, p. 2). JBT's response denies this statement, making conclusions of injury based on inadmissible evidence and citing only evidence that might give rise to the rebuttable presumption in the first place. (Doc. 98-1, p. 2).

All of the cited admissible evidence is sufficient to rebut any presumption that JBT suffered an economic injury proximately caused by Morris's alleged false advertising. What is more, the same evidence also rebuts any presumption of likelihood of irreparable harm that might justify injunctive relief, and JBT cites no evidence that customers are likely to withhold sales or that its reputation or goodwill are likely to be damaged by Morris's alleged false advertising.

Because JBT has had adequate time for discovery,[9] JBT's failure to come forward with

---

[9] JBT's request for additional discovery is addressed later in this opinion.

admissible evidence of lost sales, reputation, or goodwill, or the likelihood of such injury, is fatal. *Celotex Corp.*, 477 U.S. at 322–23 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); Fed. R. Civ. P. 56(c)(1), (e)(2); W.D. Ark. R. 56.1(c). Summary judgment for Morris is proper on all false advertising claims related to the IntraGrill product.

### B.     State Law Claims

#### 1.     North Carolina Unfair and Deceptive Practices Act

Under North Carolina law, unfair methods of competition and unfair or deceptive acts are unlawful. N.C. Gen. Stat. Ann. § 75-1.1. Anyone harmed by these unlawful acts may bring a civil action. N.C. Gen. Stat. Ann. § 75-16. To prevail in such an action, the plaintiff must show that the defendant committed an unfair or deceptive act or practice, the act or practice was in or affected commerce, and the act or practice proximately caused injury to the plaintiff. *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001). To demonstrate that an alleged misrepresentation is the proximate cause of an alleged injury, the plaintiff must show reliance on the alleged misrepresentation. *Bumpers v. Cmty. Bank of N. Va*, 747 S.E.2d 220, 226–27 (explaining at length that where the unlawful act is a misrepresentation, an injury is only proximately caused by reliance on the misrepresentation).

JBT cites no evidence whatsoever that it relied on Morris's alleged misrepresentations. Without a showing of reliance, JBT cannot show any loss was proximately caused by that reliance. Judgment for Morris is proper on all North Carolina Unfair and Deceptive Practices Act claims related to the IntraGrill product.

## 2.    Arkansas Deceptive Trade Practices Act

The Arkansas Deceptive Trade Practices Act allows a private right of recovery for deceptive trade practices, but only where the claimant can prove that it "suffered an actual financial loss proximately caused by [its] reliance on the use of a practice declared unlawful under this chapter." Ark. Code Ann. § 4-88-113(f)(2). JBT offers no evidence whatsoever that it relied on Morris's alleged deceptive trade practices. Without a showing of reliance, JBT cannot show any loss was proximately caused by that reliance. Judgment for Morris is proper on all Arkansas Deceptive Trade Practices Act claims related to the IntraGrill product.

## 3.    Arkansas Common Law Unfair Competition

Under Arkansas common law, a plaintiff may recover against a defendant for the tort of unfair competition where the defendant engages in "a course of dealing which leads, or is likely to lead, consumers into believing that the goods or services of one supplier are those of another." *Gaston's White River Resort v. Rush*, 701 F. Supp. 1431, 1435 (W.D. Ark. 1988) (citing *Sw. Bell Tel. Co. v. Nationwide Indep. Directory Serv., Inc.*, 371 F.Supp. 900 (W.D. Ark. 1974); *Heuer v. Parkhill*, 114 F.Supp. 665 (W.D. Ark. 1951); *see also Esskay Art Galleries v. Gibbs*, 172 S.W.2d 924, 926–27 (Ark. 1943) ("Unfair competition ordinarily consists in the simulation by one person for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor." (quoting 26 RULING CASE LAW 875 (William McKinney & Burdett Rich, eds., 1920))). JBT offers no evidence that Morris's IntraGrill simulates or imitates JBT's FATCAT, nor that any customers were deceived into purchasing an IntraGrill from Morris while believing it to be a FATCAT. Judgment for Morris is proper on all Arkansas common law unfair

competition claims related to the IntraGrill product.

### C.    Additional Discovery

JBT argues that it should be allowed additional time to complete discovery before the Court rules on whether summary judgment is proper on these claims.  Additional discovery must be allowed if it is necessary to "prevent a party from being unfairly thrown out of court by a premature motion for summary judgment."  *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1997).  The Court is within its discretion to deny additional discovery when the nonmovant merely seeks to delay the inevitable or drive up the cost of litigation to force a beneficial settlement.  "Rule 56(f) does not condone a fishing expedition . . . for documents that might confirm [a plaintiff's] 'information and belief.'"  *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997).

JBT represented in its complaint and amended complaint that it has suffered and is likely to suffer economic and competitive injury.  JBT now cites hearsay evidence that a customer feared litigation with Morris to argue that shortly after JBT began offering flow reliefs in its auger chillers, that customer declined flow reliefs because of Morris's alleged false marking and false advertising.  JBT has known of this incident since 2013, more than a year before the filing of this lawsuit, but has not followed up with the customer for an affidavit or declaration regarding the cause of that customer's decision.  This incident is the extent of JBT's disclosed evidence to support its information and belief about its competitive or economic injuries.  JBT states that it has not yet conducted any third-party discovery, including into this incident, even though the Court sided with JBT and allowed discovery into general matters from the outset.  Finally, JBT appears not to have conducted any customer surveys at any point, indicating that it has consistently intended to rely only on a rebuttable presumption, and not on evidence of actual injury.  JBT fails to show that it would be "unfair" to ask it, nearly five years after the customer declined flow reliefs, and two-and-

a-half years after initiation of the lawsuit, to provide some admissible evidence that Morris's conduct was the proximate cause of some economic or competitive injury.

### D.  Reconsideration of the Protective Order

JBT's request that the Court reconsider entry of its protective order will be denied.  The Court precluded additional discovery into sales and financial information relevant to the IntraGrill auger chiller because that discovery was not proportional to the needs of the case.  At the time the order was entered, JBT had not yet cited to any evidence that it was proximately harmed by Morris's alleged false marking of the IntraGrill auger chiller.  Prior to that point, the Court entered a scheduling order (Doc. 46) that denied Morris's request to limit discovery, and JBT had had ample opportunity and time to engage in third-party discovery to support its allegations of competitive and economic injury.  It appeared then that allowing JBT access to Morris's financial information to determine the value of damages for a harm JBT could not show had occurred was more akin to a fishing expedition than discovery.

In light of the Court's analysis on the motions for partial summary judgment, and JBT's continued failure to provide any evidence that Morris's alleged false marking or false advertising proximately caused any harm to JBT, the Court's proportionality analysis remains unchanged. Discovery into all of Morris's sales and financial information relevant to the IntraGrill auger chiller is not proportional to the needs of the case.  Additionally, because claims associated with Morris's marking and advertising of the IntraGrill auger chiller as patented under the '529 patent will be dismissed, that discovery is not only disproportionate, but is now far less relevant to the remaining claims or defenses.

### V.  Conclusion

IT IS THEREFORE ORDERED that Defendant Morris & Associates, Inc.'s motions for

partial summary judgment (Docs. 84 and 91) are GRANTED, and Plaintiff John Bean Technologies Corporation's false marking, false advertising, and State law claims related to the '529 Patent and Morris's IntraGrill auger chiller are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's motion for reconsideration (Doc. 78) is DENIED.

IT IS SO ORDERED this 19th day of June, 2018.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE