UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHN BEAN TECHNOLOGIES
CORPORATION                                                                 PLAINTIFF

v.                                    No. 2:15-CV-02211

MORRIS & ASSOCIATES, INC.                                              DEFENDANT

**OPINION AND ORDER**

Before the Court is a motion (Doc. 136) for summary judgment filed by Defendant Morris & Associates, Inc. ("Morris"). Morris filed a redacted brief (Doc. 137) and statement of facts (Doc. 138) in support. Morris also filed an unredacted brief in support (Doc. 140-1), unredacted statement of facts (Doc. 140-2), and unredacted exhibits (Docs. 140-3, 140-4) to the motion. Plaintiff John Bean Technologies Corporation ("JBT") filed a redacted response brief (Doc. 144) and statement of facts (Doc. 145) in opposition. JBT also filed an unredacted brief (Doc. 146) and statement of facts (Doc. 147). Morris filed a reply (Doc. 151), and JBT filed a surreply (Doc. 154) with leave of Court. Morris's motion requests judgment be entered against JBT on JBT's remaining federal law claims alleging false marking and false advertising of Morris's COPE products as patented under United States Patent Nos. 7,470,173 ("the '173 patent") and 7,588,489 ("the '489 patent") and North Carolina and Arkansas state law claims.

Because no reasonable jury could find that Morris's COPE products are unpatented, the motion will be granted.

**I.      Procedural Posture**

This action was filed in 2015 by Cooling & Applied Technology, Inc. ("CAT"). CAT asserted Patent Act false marking claims pursuant to 35 U.S.C. § 292(b), Lanham Act false advertising claims pursuant to 15 U.S.C. § 1125, and various North Carolina and Arkansas state

1

law claims against Morris. CAT's claims involved Morris's IntraGrill auger chiller, marked as patented under United States Patent No. 6,308,529 ("the '529 patent"), and Morris's COPE products, marked as patented under the '173 and '489 patents. Morris filed a motion to dismiss the false marking claims and any associated Lanham Act and state law claims. CAT's business was acquired by JBT, and CAT assigned its claims in this lawsuit to JBT without opposition from Morris. The Court substituted JBT for CAT and denied the motion to dismiss. (Doc. 42).

On July 19, 2017, the Court held a claim construction hearing. JBT then amended its complaint (Doc. 64), primarily adding additional factual allegations in support of its willfulness claims, and maintaining its nonspecific allegations that it had been or was likely to be injured by Morris's false marking and false advertising. An unredacted copy (Doc. 65) of the amended complaint was filed under seal. On June 19, 2018, because of JBT's failure to show proximately-caused injury or reliance, the Court granted partial summary judgment (Doc. 110) to Morris on JBT's federal false marking and false advertising claims, North Carolina Unfair and Deceptive Practices Act claims, Arkansas Deceptive Trade Practices Act claims, and Arkansas common law unfair competition claims related to Morris's IntraGrill auger chiller and the '529 patent.

On December 11, 2018, the Court entered a claim construction opinion and order. (Doc. 133). Thereafter, Morris filed its motion for summary judgment on the remaining claims.

## II. Standard of Review

### A. Summary Judgment

After viewing the record in the light most favorable to the nonmoving party and granting all reasonable factual inferences in the nonmovant's favor, a motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *Haggenmiller*

*v. ABM Parking Serv., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "While the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Haggenmiller*, 837 F.3d at 884 (quotations omitted).

A party who seeks additional discovery in response to a motion for summary judgment must do more than speculate that additional discovery would be useful—it must show, without conclusory statements that some evidence might possibly be found, how additional discovery would alter the evidence before the court. *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir. 1999).

### B. Controlling Substantive Federal Law

The Court applies Federal Circuit precedent to patent law issues, but otherwise applies the precedent of the Eighth Circuit. *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc in relevant part), *abrogation on other grounds recognized by Amgen Inc. v. Sandoz Inc.*, 877 F.3d 1315, 1325–26 (Fed. Cir. 2017). The Court applies Federal Circuit precedent to JBT's Patent Act false marking claims. *Panduit Corp. v. All States Plastic Mfg. Co., Inc.*, 744 F.2d 1564, 1573 (Fed. Cir. 1984), *overruled on other grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985). The Court applies Eighth Circuit precedent to JBT's Lanham Act false advertising claims. *Syngenta Seeds, Inc. v. Delta Cotton Co-op, Inc.*, 457 F.3d 1269, 1273 (Fed. Cir. 2006). The Court applies the relevant state law to those claims over which it is exercising supplemental jurisdiction under 28 U.S.C. § 1367. *Felder v. Casey*, 487 U.S. 131, 151

(1988) ("[W]hen a federal court exercises diversity or pendent jurisdiction over state-law claims, 'the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'" (quoting *Guar. Tr. Co. v. York*, 326 U.S. 99, 109 (1945))).

## III. Facts

JBT and Morris are manufacturers and distributors of poultry processing equipment purchased and used by poultry processors in the United States. Among the products Morris manufactures and distributes to poultry processors are tanks in which poultry processors can submerge their product in fluid for a relatively short period for decontamination. Morris brands these decontamination tanks as COPE products and advertises three types of those as patented: Pre-COPE, COPE-FC, and Parts COPE. The Pre-COPE tanks typically treat poultry product prior to that product being chilled in a chiller.[1] The COPE-FC tanks typically treat poultry product after that product has been chilled in a chiller. The Parts COPE tanks typically treat poultry product that has been cut into discrete chicken parts familiar to poultry consumers—breasts, thighs, wings, strips, etc. Morris is the owner of the '173 patent and the '479 patent, which disclose "post chill decontamination tanks." Morris marks its COPE tanks as protected by these patents, and advertises them for sale as patented.

During processing, poultry product enters a COPE tank through an inlet chute, is maneuvered through the tank by a paddle wheel, and exits the tank through an exit opening. On many COPE products, the inlet chute and exit opening are located on opposite sides of the upper half of the tank. While in the tank, poultry product is submerged in a fluid, which can be supplied

---

[1] A chiller is a separate piece of equipment used to reduce the temperature of poultry product in a processing line for food safety.

to the tank through an inlet port.

IV.     **Analysis**

JBT brings Patent Act false marking claims under 35 U.S.C. § 292 and Lanham Act false advertising claims under 15 U.S.C. § 1125. JBT alleges that Morris's '173 and '489 patents do not read on Morris's COPE products and so those products are falsely marked and falsely advertised as patented. JBT also brings North Carolina Unfair and Deceptive Practices Act claims pursuant to N.C. Gen. Stat. Ann. § 75-16, Arkansas Deceptive Trade Practices Act claims pursuant to Ark. Code Ann. § 4-88-113(f)(2), and Arkansas common law unfair competition claims on the basis that Morris's representation that COPE products are patented is a misrepresentation of material fact.

   A.     **Federal Claims**

To prevail on its false marking claims under the Patent Act, JBT must show that Morris, intending to deceive the public, falsely marked its COPE products as patented, that the COPE products are not in fact patented, and that the false marking proximately caused competitive injury to JBT. 35 U.S.C. § 292; *Gravelle v. Kaba Ilco Corp.*, 684 F. App'x 974, 978 (Fed. Cir. 2017) (citing *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396 (Fed. Cir. 2015)); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) (explaining presumption that statutory causes of action are limited to plaintiffs whose injuries are proximately caused by violations). To prevail on its false advertising claims under the Lanham Act, JBT must show that Morris misrepresented its COPE products as patented, and that the misrepresentation proximately caused an injury to JBT's commercial interest in sales or business reputation. 15 U.S.C. § 1125(a); *Lexmark Int'l, Inc.*, 572 U.S. at 140. If JBT cannot show that Morris's COPE products are unpatented, the claims fail.

Morris's motion for summary judgment argues that there is no genuine dispute about whether claim 7 of the '173 patent and claim 10 of the '489 patent read on Morris's COPE products. Morris argues that its COPE products embody those claims of those patents, and so JBT cannot show the products are unpatented. JBT disagrees, arguing that a dispute of fact remains with respect to whether the COPE products include an "upper opening means" as required by the first limitations in claim 7 of the '173 patent and claim 10 of the '489 patent and to whether the COPE products embody what JBT argues are functional limitations in these patent claims limiting the placement of patented articles in a processing line. JBT also argues that additional discovery is necessary to determine whether the COPE products include the conduit necessary to embody the second limitation of claim 10 of the '489 patent, "means connected to said tank for supplying to said tank an antimicrobial-bearing liquid of different antimicrobial content than the liquid in the poultry chiller." (U.S. Patent No. 7,588,489, col. 8, l. 52–54 (filed June 16, 2008)).

1. **Upper Opening Means**

The first limitations of claim 7 of the '173 patent and claim 10 of the '489 patent are identical, and require a patented article to possess "upper opening means for receiving the poultry carcasses in said tank and for discharging the poultry carcasses from said tank." During claim construction, the parties agreed (and the Court accepted) that this is a means-plus-function limitation, as allowed by 35 U.S.C. § 112(f); that the function is "receiving the poultry carcasses in the tank and discharging the poultry carcasses from the tank;" and that the corresponding structure is "an opening in an upper portion of the tank or an upwardly positioned opening formed in the upper perimeter of the tank and equivalents thereof." (Doc. 133, pp. 20–21). JBT argues that this construction requires patented articles to have a single opening for both receiving and discharging poultry carcasses, that each of Morris's COPE products lacks a single opening, but

instead has a separate inlet chute and exit opening, and that genuine issues of material fact remain with respect to whether the COPE products' inlet chutes and exit openings are a structural equivalent to a single opening, practicing an identical function to that opening.

As an initial matter, the parties' agreed construction of the corresponding structure in these limitations—"an opening in an upper portion of the tank or an upwardly positioned opening formed in the upper perimeter of the tank and equivalents thereof"—requires some additional discussion (perhaps more metaphysical than technical) than has been given by either the Court or the parties. An opening in a material, divorced from that material, is void, nothing. It cannot be structure, because implicit in structure is material. There must be *some* thing, rather than nothing, for that something to be a structure. The construction agreed to by the parties and adopted by the Court recognizes this—the structure must be an opening *in the tank*, and so the description of that structure necessarily includes the tank.

The parties' agreed construction also recognizes the potential application of the narrowed, statutory version of the doctrine of equivalents (found in 35 U.S.C. § 112(f)) to the "upper opening means" limitations. The Court of Appeals for the Federal Circuit has previously addressed this statutory equivalence doctrine:

> A claim limitation written in means-plus-function form, reciting a function to be performed rather than definite structure, is subject to the requirements of 35 U.S.C. § 112, ¶ 6 [now 35 U.S.C. § 112(f)]. *See B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). As such, the limitation must be construed "to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *See* [35 U.S.C. § 112(f)]; *B. Braun Med.*, 124 F.3d at 1424. Literal [embodiment] of a [§ 112(f)] limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification. *See, e.g.*, *Al-Site Corp. v. VSL Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (en banc). Functional identity and either structural identity or equivalence are *both* necessary. *See Pennwalt*, 833 F.2d at 934.

7

> Structural equivalence under [§ 112(f)] is, as noted by the Supreme Court, "an application of the doctrine of equivalents . . . in a restrictive role." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 28 (1997). . . . [T]he statutory equivalence analysis requires a determination of whether the "way" the assertedly substitute structure performs the claimed function, and the "result" of that performance, is substantially different from the "way" the claimed function is performed by the "corresponding structure, acts, or materials described in the specification," or its "result." Structural equivalence under [§ 112(f)] is met only if the differences are insubstantial, *see Chiuminatta* [*Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998)]; that is, if the assertedly equivalent structure performs the claimed function in substantially the same way to achieve substantially the same result as the corresponding structure described in the specification. *See* [35 U.S.C. § 112(f)] (means-plus-function claim literally covers "the corresponding structure, material, or acts described in the specification *and equivalents thereof*" (emphasis supplied)).

*Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266–67 (Fed. Cir. 1999).

Following claim construction, JBT is correct that a tank with a single opening is the structure literally claimed in the means-plus-function limitations in the '173 and '489 patents. And there is no genuine dispute that the tank with a single opening literally claimed in the "upper opening means" limitations and the separate inlet chutes and exit openings present in Morris's COPE products satisfy § 112(f)'s identity-of-function requirement. Whether presented with a tank with one opening in the upper portion for both input and output or a tank with one opening in the upper portion for input and one opening in the upper portion for output, the function of the opening or openings in the tank remains the same—receiving the poultry carcasses in the tank and discharging the poultry carcasses from the tank.[2]

---

[2] JBT argues without evidentiary basis that placement of the inlet chute and exit opening on Morris's COPE products has an additional advantageous function of allowing poultry carcasses to enter and exit the tank "below the paddles," preventing poultry carcasses from accidentally contacting paddles while entering the tank or from prematurely exiting the tank. (Doc. 144, pp. 13–14). If an equivalent corresponding structure performs a function identical to the claimed function, that the equivalent corresponding structure may perform an additional function is of no import. *Vulcan Eng'g Co., Inc. v. Fata Aluminium, Inc.*, 278 F.3d 1366, 1375 (Fed. Cir. 2002) ("It is irrelevant whether an element has capabilities in addition to that stated in the claim. When the claimed function is performed in the accused system, by the same or equivalent structure,

With respect to the number of openings, JBT is incorrect to argue that a "genuine" dispute of material fact exists about equivalence of structure. JBT first cites *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999) for the proposition that an equivalent structure "cannot embrace technology developed after the issuance of the patent." JBT then argues Morris has failed to establish that there are no genuine disputes of fact because Morris has not argued or provided evidence that the inlet chute and exit opening embrace technology developed before issuance of the patents. The inlet chute and exit opening are holes in the side of a tank that allow poultry carcasses to enter and exit the tank, and there is no evidence or argument that they "embrace technology" other than that. JBT previously agreed, and still argues, that the literal construction of the limitations at issue teaches a hole in the side or top of a tank that exists for this purpose. It borders on absurd for JBT to argue now that Morris cannot show this technology—a hole in the side of a tank that lets poultry carcasses pass through it—existed at the time the patent issued. Nonsensical arguments need not be indulged, especially at the summary judgment stage where the Court must determine whether a reasonable jury could return a verdict in the nonmovant's favor.

In an effort to save its doomed argument, JBT argues that the motion must be denied because expert discovery is necessary before the Court can resolve whether the structures are equivalent. (Doc. 146-1, p. 12). JBT argues that this is a case where "the difficulties and complexities of the doctrine [of equivalents] require that evidence be presented to the jury or other fact-finder through the particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents." *AquaTex Indus., Inc. v.*

---

[embodiment] of that claim element is established. *See N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 945 (Fed Cir. 1990) (infringement is not avoided 'if a claimed feature performs not only as shown in the patent, but also performs an additional function.').").

*Tehniche Sols.*, 479 F.3d 1320, 1329 (Fed. Cir. 2007). First, *AquaTex* addresses the broader common law doctrine of equivalents rather than the narrower statutory equivalents question addressed in a § 112(f) analysis. Second, while expert discovery may be necessary on complex issues of equivalency, it is not required as a matter of law, particularly where the technology at issue—an opening in the upper portion of the side of a tank through which poultry carcasses may pass—is simple and easily understood by a layperson. "[W]ith regard to the objective nature of the doctrine [of equivalents], a skilled practitioner's knowledge of the interchangeability between claimed and accused elements is not relevant for its own sake, but rather for what it tells the fact-finder about the similarities or differences between those elements." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997); *cf. Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369–70 (Fed. Cir. 2004) (declining to impose a per se rule that expert testimony is required even in cases of complex technology). "Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." *Id.* at 38, n.8. As a corollary, where the evidence is such that a reasonable jury could only determine that two elements are equivalent, district courts are no less obliged to grant partial or complete summary judgment.

No reasonable jury would make a finding of fact in this case other than that tanks with inlet chutes and exit openings in their upper portions, those openings performing the required function of receiving and discharging poultry carcasses from the tank, are equivalent structures to the tank with the "opening in an upper portion of the tank or an upwardly positioned opening formed in the upper perimeter of the tank" literally described in the limitations. Judgment for Morris is proper on this issue.

2. **Functional Limitations on Placement in Processing Line**

JBT argues that Morris's COPE products sold for placement prior to a poultry chiller in a processing line, or even in a processing line that has no liquid chiller, do not practice the patents because the phrases "treating and reducing microbial contamination of poultry carcasses received from a poultry chiller" and "further reducing the microbial contamination on the surfaces of the poultry carcasses" in claim 7 of the '173 patent and "decontaminating poultry carcasses received from a poultry chiller" in claim 10 of the '489 patent are functional limitations that dictate placement of a patented article after a poultry chiller in a processing line and require the patented article to treat whole poultry carcasses.

To make this argument, JBT ignores the Court's claim construction order, which reads these phrases as limiting a patented article's structure, not its use. (Doc. 133, pp. 16–18). "It is no new invention to use an old machine for a new purpose. The inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter whether he had conceived the idea of the use or not." *Roberts v. Ryer*, 91 U.S. 150, 157 (1875).

JBT shows no genuine dispute of material fact with respect to whether Morris's COPE products are capable of being placed after a poultry chiller in a processing line, or of decontaminating whole poultry carcasses. Judgment for Morris is proper on this issue.

### 3. Additional Discovery

JBT argues that Morris has not timely or sufficiently disclosed its contentions that COPE products all embody the second limitation of claim 10 of the '489 patent, "means connected to said tank for supplying to said tank an antimicrobial-bearing liquid of different antimicrobial content than the liquid in the poultry chiller." In its claim construction order (Doc. 133, p. 19), the Court determined that construction of this claim term was required only because in JBT's amended contentions (Exhibit U to JBT's amended complaint, incorporated into that complaint by

11

reference), JBT specifically accused "COPE-3W, COPE-5W, COPE-8W, PRE-COPE-8WHS, PRE-COPE-10WHS, and PRE-COPE-12WHS" of "completely lacking this claim element." (Doc. 64-18, p. 8). It was for this reason the Court determined construction of the limitation was material and necessary, and then construed it as a means-plus-function limitation. The Court identified the function as "supplying to said tank an antimicrobial-bearing liquid of different antimicrobial content than the liquid in the poultry chiller." (Doc. 133, p. 19). The Court then identified the corresponding structure as "a conduit connected to the post chill decontamination tank." (Doc. 133, p. 20).

JBT now has updated its contentions and argues that "all COPE models" fail to embody this limitation "because, upon information and belief, Morris does not provide with its COPE product piping or antimicrobial-bearing liquid of any kind necessary to meet this limitation." (Doc. 136-2, p. 19). It is apparently discovery into whether this information and belief is factually true, and not whether each COPE product has connected to it a conduit for supplying antimicrobial liquid, that JBT argues is necessary.

JBT's request for additional discovery on the grounds that it is unfamiliar with the construction or configuration of machines it nevertheless confidently claims are unpatented rings hollow at this stage of litigation. Presumably JBT's allegation that the COPE products are unpatented was based on actual information and belief about those products, obtained either here, or in prior litigation, or during market research. Furthermore, the result of the requested discovery would be immaterial to the question of whether the COPE products practice the '173 and '489 patents. No reasonable jury would find that piping to connect to the conduit or the antimicrobial fluid to be piped through it are necessary elements of an article embodying this limitation. No reasonable jury would find that because piping and antimicrobial fluid are not included in the

structure identified by this means-plus-function limitation, as construed by the Court. Rather, a jury's inquiry would be focused on whether each COPE product had connected to it a conduit and whether that conduit was the means by which users supply antimicrobial fluid to the COPE product. On the record before the Court, there is no genuine dispute about whether each COPE product has such a conduit. Morris points to evidence that each does, and JBT merely speculates that Morris may be incorrect. Nor is there any genuine dispute that the conduit is the means by which the function of supplying the tank with antimicrobial-bearing liquid is performed. The Court will not hold this motion in abeyance so that JBT can engage in futile discovery.

Because no reasonable jury would find that Morris's COPE products are unpatented, JBT cannot prevail on its false marking and false advertising claims, and summary judgment for Morris will be entered on the remaining federal claims.

### B. State Law Claims

The Court has jurisdiction over JBT's state law claims pursuant to 28 U.S.C. § 1367. Because the Court will dismiss all claims over which it has original jurisdiction, it would be within the Court's discretion to dismiss JBT's state law claims without prejudice. 28 U.S.C. § 1367(c)(3); *Keating v. Neb. Pub. Power Dist.*, 660 F.3d 1014, 1018–19 (8th Cir. 2011). However, each of those state law claims is premised on Morris's representation that its COPE products are patented, which JBT alleges is a misrepresentation. Because no reasonable jury would find that Morris's COPE products are unpatented, JBT cannot show a misrepresentation, and its state law claims necessarily must fail on their merits. The Court will continue to exercise supplemental jurisdiction, and will dismiss all remaining state law claims with prejudice.

### C. Requested Rule 37(b) Sanctions

JBT's response requests that the Court sanction Morris pursuant to Federal Rule of Civil

Procedure 37(b) for failing to provide updated contentions that are as detailed as the arguments found in Morris's motion for summary judgment. Counsel for the parties are no doubt well aware of this Court's distaste for procedural gamesmanship and frustrations with parties who ignore the Rules. Assuming JBT's characterization of Morris's conduct were accurate and that conduct were sanctionable, and assuming JBT were itself blameless in this area of discovery, the Court might consider imposing a sanction. In this case, however, JBT cannot prevail on the merits. Sanctioning Morris by preventing it from relying on evidence and argument at summary judgment, only to see Morris prevail of necessity on the same evidence and argument at trial, would elevate form over substance to such an extent that it would contravene Rule 1's admonition that the Rules be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The Court will not impose a Rule 37 sanction.

### D. Remaining Motions

Several discovery-related motions (Docs. 121, 124, 128, and 131) are pending. Because resolution of those motions in JBT's favor would not affect the outcome of this motion for summary judgment, and because the entry of judgment following entry of this order will terminate the action, those motions will be denied as moot.

### E. Sealed and Access-Restricted Documents

On March 1, 2017, the Court entered a protective order (Doc. 48) permitting the parties to designate material as confidential if those parties believed in good faith that the material was entitled to protection under Federal Rule of Civil Procedure 26(c). On June 23, 2017, the Court entered an amended protective order (Doc. 57), again addressing that process. The Court has allowed the parties to file designated confidential material on the docket with access restricted to

the Court and the parties. The parties in this case have made more extensive use of that allowance than parties in any other case where the Court has entered similar protective orders. Having now had ample opportunity to review all of the designated confidential materials that have been filed, and having read unredacted versions of the redacted filings in this case, the Court is unconvinced that the filed and redacted materials are, or should remain, entitled to protection under Federal Rule of Civil Procedure 26(c).

This Court belongs to the public. It is a forum for the public resolution of disputes. Where there is no good cause to keep filed material from public view, the Court is reluctant to do so. Because Rule 26(c) good cause is not apparent from the face of the filings kept from public view, it is the Court's intent to allow public access. However, the Court has no reason to believe that the parties who designated the filed materials as confidential did not make those designations in good faith. Prudence dictates that those parties should be given an opportunity to show the Court the good cause that motivated their good faith belief.

To that end, the parties may file responses to this order within 7 days of its entry, though they are not required to do so. For each filing on the docket that a party wishes to remain restricted, the party's response should identify the restricted access document by docket entry number, and for each redaction identify it by docket entry number and ECF page; should provide a brief description of the restricted or redacted information akin to the description required in a Rule 26(b)(5)(A)(ii) privilege log; and should make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" supporting the existence of Rule 26(c) good cause to retain the restriction or redaction. *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (citing Wright & Miller, *Federal Practice and Procedure: Civil* § 2035 at 264-65).

V.  **Conclusion**

IT IS THEREFORE ORDERED that Defendant Morris & Associates, Inc.'s motion for summary judgment (Doc. 136) is GRANTED, and Plaintiff John Bean Technologies Corporation's remaining claims are DISMISSED WITH PREJUDICE.  Judgment will be entered separately.

IT IS FURTHER ORDERED that Plaintiff's remaining motions (Docs. 121, 124, 128, and 131) are DENIED AS MOOT.

IT IS FURTHER ORDERED that the parties are permitted to respond to this order to show cause by September 13, 2019 why every access-restricted document or redaction in an otherwise public document filed in this case should remain access-restricted or redacted.

IT IS SO ORDERED this 6th day of September, 2019.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE